OPINION OF THE COURT
W. Dennis Duggan, J.
Before the court is the permanency review of the child Pedro M. The issue to be decided is the meaning to be given to a recent amendment to Family Court Act § 1089 (d), which went into effect on December 31, 2007. That section provides that at the permanency hearing, the court shall engage in “age-appropriate consultation with the child.” (Emphasis added.)[1]
In this case, Pedro, almost 16, wishes to come to court for his permanency review hearing. The Department takes the position that he should not come to court because the court appearance is emotionally upsetting for him. It asserts that before and after his last court appearance six months ago, Pedro’s frequency of acting out increased markedly.[2]
First, to implement this new child consultation policy, the following guidelines have been put into effect in this Part. For any child age seven or over, there is a presumption that the child should be produced in court. For any child under age seven, there is a presumption that the child should not be produced in court. If an attorney for a child under age seven wishes to have his client appear in court, the attorney need only communicate that to the court and the Department with some good faith basis for the request.
*647 For juveniles age seven or over, the standard is somewhat higher to justify their nonappearance. In that case, it would require a showing of special circumstances to support a waiver of the child’s appearance. The reason for this is obvious. An adult party, in civil cases, may chose not to appear in court. These types of cases can proceed by default and many do by design. However, the Legislature has, in Family Court Act § 1089 (d), commanded the Family Court judge to “consult” with the child. “Consultation,” given its plain English meaning, is “a conference at which advice is given or views are exchanged.”[3] In our society and under our laws, the age of seven is generally considered the “age of reason.” This is the age when children have a sufficient facility with the spoken language to be able to communicate with adults. As a result, they are expected to conform their behaviors to law, custom and adult guidance and to be responsible for certain consequences when they do not. It is the age at which the Legislature established the jurisdictional floor for when juveniles must accept responsibility for their delinquent acts and for their ungovernable behavior when found to be a person in need of supervision (PINS). Important to this case is that, in those types of cases, the Legislature, strongly prompted by the United States Supreme Court, has instructed that a juvenile has the constitutional right to be in court to be heard.[4] Indeed, the juvenile must be in court for the proceedings to take place. For these reasons, this court has established age seven as a bright line rule for the juvenile’s required appearance for a permanency review hearing.[5]
Federal guidelines on this subject do not mandate the physical appearance of the child in court. “Any action that permits the court to obtain the views of the child in the context of the *648 permanency hearing could meet the requirement . . .We do not interpret the term ‘consult’ to require . . . the physical presence of the child at a permanency hearing.”[6] However, if it was not the clear purpose of this amendment to encourage and increase the direct participation of children in Family Court proceedings that intimately affect their lives, then the new consultation policy would just be window dressing. After all, we have always had law guardians to advocate for the child. Clearly, by this amendment our Legislature is telling the judge not to do things the old way, which was to hear only from the law guardian. Now, it is the law’s expectation that, at a permanency review hearing, the child will be present and the proceedings are meant to be a two-way conversation between the judge and the child. The judge and the child are to “consult” with each other.[7], [8]
In this case, the court heard testimony from Pedro’s clinical specialist at the facility where Pedro is placed as a result of his mother’s neglect. She established that Pedro became agitated in anticipation of his last court appearance and acted out after the permanency review hearing. The misbehavior included punch *649 ing staff, running into the road and twice pulling fire alarms. She also stated that Pedro does not understand the court proceedings and, after his last appearance, he was confused. She said that Pedro thought he would be going home or to another placement after court. In summary, the therapist attributed virtually all of Pedro’s misbehaviors to the court appearance.
However, Pedro’s behavioral reports do not support such a strong conclusion. Before the February 28, 2008 court appearance, he had a total of six write-ups in January and February. After the court appearance he had only two in March. That escalated to 10 in April but dropped to six in May. (Petitioner’s exhibit 1; no other monthly behavioral reports were submitted.) This pattern of misbehavior does not support a court appearance causation theory. It does, however, more strongly support a conclusion that the mother’s unplanned visit to the facility on April 11, 2008, contributed to the acting out.
In addition, there were other significant events that occurred around the time of the last court appearance. First, Pedro’s long-absent father was at the court appearance and it appears this was not anticipated and no preparation was made for that occurrence. That could have distressed Pedro. From a review of the case record, it is fair to conclude that the father, before this court appearance, had not had contact with Pedro for many, many years.
After the February court appearance, phone contact was set up between Pedro and his father. After three short calls, Pedro decided not to take any more calls. He said he did not know how to talk to his dad. This was undoubtedly upsetting to Pedro. An explanation for Pedro’s confusion about his future living arrangements could be because a representative of another placement facility came to the facility to discuss another placement with Pedro. All this, along with the unplanned visit by the mother mentioned above, could explain some, if not most of Pedro’s agitation.
On the positive side, the caseworker’s testimony established that Pedro had achieved step three on the facility’s behavioral ladder. That system starts with beginner, then learner, then leader and finally executive. The juvenile is now a leader. This is some evidence that his behavior has improved and his emotional maturity has increased since his last court appearance.
On balance, the court finds that the Department has not met its burden to show by a preponderance of the evidence that *650 special circumstances exist to deny Pedro his right to be heard and to deprive the court of its obligation to consult with Pedro in person.
A fair argument could be made that Pedro, at age 16, has a constitutional right to be heard in person when the outcome of the proceeding could be his continued placement in a juvenile facility. If a constitutional right is burdened, that burden must be justified, at a minimum, by clear and convincing evidence. The constitutional issue was not raised in this proceeding but it is worth giving it some thought because the court has determined that a preponderance of the evidence is' the proper standard.
Heightened constitutional due process rights are triggered in juvenile delinquency and PINS cases because it is, at least in part, the coercive police power of the State that is depriving the juvenile of his or her freedom to live with his or her family and in the community. In a permanency review proceeding, the State is acting as a substitute for the parent and the child is in the government’s care only because no parent can care for the child. No doubt a placement outcome for the child is the same, regardless of whether it comes in a juvenile delinquency proceeding or in a permanency review proceeding. But, the exercise of governmental power in a permanency review proceeding does not cross constitutional boundaries because the State is exercising its stand-in parent power and not its police power. Because substantive due process rights are not implicated, a preponderance of the evidence is the appropriate standard of proof.[9]
Accordingly, the case will be returned to the calendar to continue the permanency review with the juvenile present. The Department and attorney for the child are directed to consult with each other regarding whether the parents and the juvenile should be in court at the same time.

. This amendment implemented Public Law 109-288 § 10 (3), 120 US Stat 1233, which was effective October 1, 2006. See Social Security Act § 475 (5) (C) (iii) (42 USC § 675 [5] [C] [iii]). In May 2007, the Uniform Rules for the Trial Courts were amended to add a new subdivision. 22 NYCRR 205.17 (e) provides as follows: “In any permanency hearing under article 10-A of the Family Court Act, the child shall be represented by a law guardian and the Family Court shall consider the child’s position regarding the child’s permanency plan.” This subdivision was implemented before the Legislature passed the amendment to Family Court Act § 1089, adding the new subdivision (d). It is obvious that a law trumps a court rule. However, because section 205.17 (e) states nothing more than what was the status quo before the new federal law, the court rule can only be read as bureaucratic window dressing.

. The Department offered the Kolburne School “Parent/Agency Conference Report,” dated August 8, 2008 (petitioner’s exhibit 2 at 3), as proof that Pedro does not want to come to court. However, it is clear from a full reading of that report that the caseworker was trying to talk Pedro into not coming.

. American Heritage Dictionary 405 (3d ed); see also McKinney’s Cons Laws of NY, Book 1, Statutes § 231 (“In the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give each a distinct and separate meaning”); Statutes § 232 (“Words of ordinary import used in a statute are to be given their usual and commonly understood meaning, unless it is plain from the statute that a different meaning is intended”); Statutes § 234 (“Dictionary definitions may be useful as guide posts in determining the sense with which a word was used in a statute, but they are not controlling”).

. In re Gault, 387 US 1 (1967).

. For a discussion of this subject see Holly Brewer, Age of Reason? Children, Testimony and Consent in Early America, appearing in Christopher L. Tomlins and Bruce H. Mann, The Many Legalities of Early America, at 293-332 (Univ of North Carolina Press, Chapel Hill 2001) and Neil Postman, The Disappearance of Childhood (First Vintage Books ed NY 1994).

. U.S. Department of Health and Human Services, Administration for Children and Families, Child Welfare Policy Manual § 8.3C.2c (4).

. For evidence that the increased participation of children in court proceedings that affect them is now preferred see Khoury, Seen and Heard: Involving Children in Dependency Court, 25 ABA Child L Prac (No. 10) 145, 145-146, 150-155 (Dec. 2006); Khoury, With Me, Not Without Me: How to Involve Children in Court, 26 ABA Child L Prac (No. 9) 129, 129-130, 134-138 (Nov. 2007); Pitchal, Where Are All the Children? Increasing Youth Participation in Dependency Proceedings, 12 UC Davis J Juv L & Pol’y 233 (winter 2008); Krinsky, The Effect of Youth Presence in Dependency Court Proceedings, Juv & Fam Just Today 16 (fall 2006); Badeau and Freundlich, Including the Voices of Young Children and Children with Disabilities in their Own Court Proceedings, In Press 25 (June 2006); Jones, Making Youth a Meaningful Part of the Court Process, Juv & Fam Just Today 20 (fall 2006).

. United Nations Convention on the Rights of the Child, UN General Assembly resolution 44/25 (Nov. 20, 1989) (This convention has been ratified by 193 nations. Only the United States and Somalia have not ratified it. Somalia has expressed an intent to do so in the near future) in article 12 states:
“1. Parties shall assure to the child who is capable of forming his or her own views the right to express those views freely in all matter affecting the child, the views of the child being given due weight in accordance with the age and maturity of the child.
“2. For this purpose, the child shall in particular be provided the opportunity to be heard in any judicial and administrative proceedings affecting the child, either directly, or through a representative or an appropriate body, in a manner consistent with the procedural rules of national law.” (Emphasis added.)

. Compare, for example, a termination of parental rights proceeding where a parent’s rights to the care, custody and control (and the concomitant right of a child to be cared for, controlled by and in the custody of a parent) of his or her child can be permanently severed. These cases must be supported by clear and convincing evidence. Santosky v Kramer, 455 US 745 (1982).